UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

JOSÉ BATLLE, M.D.,                      :

              Plaintiff,      :      **MEMORANDUM DECISION**

        - against -            :      05 Civ. 8373 (DC)

ASSOCIATES FOR WOMEN'S MEDICINE,   :
PLLC, SCOLARO LAW FIRM, KEYBANK
NATIONAL ASSOCIATION, JAMES BROWN, :
JR., M.D., RICHARD WALDMAN, M.D.,
MARGARET DALTON and MARCO           :
COMPAGNI, ESQ.,
                        :
              Defendants.
                        :
- - - - - - - - - - - - - - - - - - -x

**APPEARANCES:**        JOSÉ BATLLE, M.D.
                        Pro Se Plaintiff
                        155 E. 34th St., Apt. 4J
                        New York, NY  10016

                        SCOLARO, SHULMAN, COHEN, FETTER
                        & BURSTEIN, P.C.
                        Attorneys for Defendants Associates for
                          Women's Medicine, PLLC, James Brown, Jr.,
                          M.D., Richard Waldman, M.D. and
                          Margaret Dalton
                             By:  Andrew M. Knoll, Esq.
                        507 Plum Street, Suite 300
                        Syracuse, NY  13204

                        WILSON, ELSER, MOSKOWITZ, EDELMAN
                        & DICKER LLP
                        Attorneys for Defendants Scolaro Law Firm and
                          Marco Compagni, Esq.
                             By:  Thomas W. Hyland, Esq.
                                  Richard B. Porter, Esq.
                        150 East 42nd Street
                        New York, NY  10017

**CHIN, D.J.**

        Pro se plaintiff José Batlle, M.D., brings this cause

of action under the Racketeering Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d).

Defendants move to dismiss, arguing that plaintiff fails to state a claim upon which relief can be granted and that his claims are barred under the doctrine of <u>res judicata</u>.  For the following reasons, the motion is granted.

**BACKGROUND**

A.   <u>Facts</u>[1]

    1.   <u>Plaintiff's Relationship With AWM</u>

      On August 3, 2001, plaintiff José Batlle, M.D., executed a Memorandum of Understanding ("MOU") with the Associates for Women's Medicine, PLLC ("AWM").  (Compl. ¶ 17). Under the terms of the MOU, plaintiff was to establish an independent primary care division within AWM.  (<u>Id.</u> Ex. A).

      On August 16th, plaintiff met with representatives from AWM and Keybank National Association ("Keybank") to open a line of credit with Keybank for $100,000.  (<u>Id.</u> ¶ 20).  Present at that meeting were Margaret Dalton, an administrator at AWM, James Brown, M.D., the President/Chairman of AWM, and Dona Vavonese, Vice President of Keybank.  (<u>Id.</u>).  The promissory note executed by the parties listed AWM as the borrower, and plaintiff -- in

---

[1]   The facts are drawn primarily from plaintiff's complaint and supporting materials attached thereto.  For purposes of this motion to dismiss, the facts as alleged in the complaint are assumed to be true.  Some of the facts regarding the second arbitration award, however, were omitted from plaintiff's complaint.  The Court may take judicial notice of judicial findings made in other proceedings, for "it is proper to consider public documents on a motion to dismiss to determine whether claims are barred by prior litigation."  <u>See</u> <u>Williams v. N.Y.C. Hous. Auth.</u>, No. 05 Civ. 2750 (DC), 2006 WL 229187, at *1 n.1 (S.D.N.Y. Jan. 31, 2006) (quoting <u>Karamoko v. N.Y.C. Hous. Auth.</u>, 170 F. Supp. 2d 372, 375 n.1 (S.D.N.Y. 2001)).

- 2 -

his individual capacity -- as the guarantor.  (Id. Ex. B).  After the documents were signed, Dr. Brown informed plaintiff that the MOU should be disregarded, as plaintiff was now a "member" of AWM.  (Id. ¶ 20).  AWM's attorneys were to provide plaintiff with final drafts of a new operating agreement reflecting a change in the status of their relationship.  (Id.).  The $100,000 was transferred to AWM's accounts by Dr. Brown in December 2001. (Id. ¶ 22).

Plaintiff continued to work as an independent primary care physician for AWM until July 2002, when AWM decided to terminate its relationship with plaintiff.  (Id. ¶ 27).  This occurred shortly after plaintiff returned from surgery on his right hand.  (Id.).  In August 2002, plaintiff was forwarded an MOU that was signed and dated August 20, 2001.  (Id. ¶ 31).  This differed from the original MOU, which was signed and dated August 3, 2001 by plaintiff.  (Id.).[2]  Plaintiff was told that there was no operating agreement reflecting plaintiff's status as a member of AWM.  (Id.).

2. **Plaintiff's Disputes With AWM**

In August 2002, Marco Compagni, an attorney for AWM, sent a letter to plaintiff's attorney, informing her that plaintiff was required to finalize certain paperwork to complete his professional obligations to his patients.  (Id. ¶ 30, Ex. G).

---

[2]     Although plaintiff contends that he was sent two MOUs -- one fraudulent -- he has submitted only one MOU to the Court. That MOU contains two dates: August 20, 2001 and August 3, 2001. Plaintiff does not specify how the two MOUs differ, if at all.

The letter also stated that the Scolaro Law Firm had possession of some of plaintiff's office equipment, and would be willing to make arrangements to forward those items to plaintiff -- after certain issues were first resolved.  (Id. Ex. G).  These issues included plaintiff's professional obligations to his patients, as well as his obligation to assume his "Division Debt as provided for in his original Memorandum of Understanding."  (Id.).

Around this time, plaintiff also received a call from Dona Vavonese, informing him that AWM was not paying back the $100,000 line of credit, and that he was responsible for it as the guarantor.  (Id. ¶ 32).  Plaintiff received another letter from Ms. Vavonese in December 2002, advising him that he owed Keybank $100,000 plus accrued interest, and that this loan was delinquent.  (Id. Ex. H).

### 3.   Arbitration Proceedings

Unable to resolve their disputes, AWM commenced arbitration proceedings against plaintiff in April 2003 pursuant to the MOU.  (Id. ¶ 35).  In August 2003, AWM obtained an arbitration award of $105,477.52 against plaintiff.  (Id. Ex. I at 2).  Plaintiff was not present at the proceedings.  (Id. ¶ 36).  Justice Thomas Murphy of the New York Supreme Court, County of Onondaga, denied confirmation of the arbitration award in October 2003 because plaintiff was unable to retain new counsel for the hearing after his initial counsel had withdrawn.  (Id. ¶ 37, Ex. I at 2).  He also directed that a new hearing be held before a new arbitrator.  (Id. Ex. I at 4).

Accordingly, in February 2004, AWM obtained a court order mandating arbitration.  (<u>Id.</u> ¶ 40).  Plaintiff argued, <u>inter</u> <u>alia</u>, that there was an attorney conflict of interest, that AWM refused to produce documents he needed, and that the MOU was fraudulent.  (<u>Id.</u>).  Notwithstanding these objections, the judge compelled arbitration (<u>id.</u>), and the proceeding was conducted on October 15, 2004 (<u>id.</u> ¶ 41).  The arbitrator also found that the MOU was not fraudulent (<u>id.</u>), and on March 17, 2005, awarded AWM $119,151.74 (Hyland Decl. Ex. B).  The arbitrator's written decision rejected, among other things, plaintiff's claims that: (1) he was a member of AWM (<u>id.</u> Ex. B at 5-6); (2) he was not obligated to repay the Keybank loan (<u>id.</u> Ex. B at 9); and (3) AWM prevented him from working by withholding his office supplies, equipment, and medical charts (<u>id.</u> Ex. B at 6-7).  The second arbitration award was confirmed by Justice Murphy on June 15, 2005.  (Hyland Decl. Ex. C).

**B.   Current Action**

Plaintiff commenced this RICO action in September 2005, alleging, <u>inter</u> <u>alia</u>, that defendants engaged in a pattern of racketeering activity that included acts of fraud and extortion. The heart of plaintiff's allegations can be summarized as follows: First, he asserts that the MOU is fraudulent, and that it does not govern his relationship with AWM because he is actually a member of AWM.  (Compl. ¶ 43).  Therefore, the arbitration was invalid.  (<u>Id.</u> ¶¶ 44, 57).  Second, he asserts that the $100,000 loan from Keybank belongs to AWM, and that AWM

- 5 -

and Keybank are engaged in a fraudulent scheme to extort payment
from him for that loan.  (<u>Id.</u> ¶¶ 46-47).  Third, he asserts that
defendants have engaged in fraud and extortion to prevent him
from practicing as a doctor.  (<u>Id.</u> ¶¶ 45, 47-51).

On September 30, 2005, the Court issued an order
requiring plaintiff to show cause why his complaint should not be
dismissed.  The order noted that plaintiff's complaint appeared
to be asking the Court to reverse a state court judgment
confirming an arbitration award against him.  The Court observed
that if this was the case, then it would lack subject matter
jurisdiction to entertain plaintiff's complaint under the <u>Rooker-
Feldman</u> doctrine.  Furthermore, the Court noted that plaintiff's
complaint did not appear to properly allege the elements of a
RICO cause of action.  Plaintiff submitted a response to the
Court's order to show cause on November 2, 2005.  The Court did
not rule on the order to show cause.  Subsequently, defendants
moved to dismiss this action.

## **DISCUSSION**

Plaintiff's complaint is dismissed for the following
reasons.  First, plaintiff's claims against AWM, Dr. Brown, and
Dr. Waldman are foreclosed under the doctrine of <u>res judicata</u>.
Plaintiff is indeed seeking to relitigate claims that were
decided against him in an arbitration award that was confirmed by
the state court.  Second, plaintiff's claims against the Scolaro
Law Firm, Marco Compagni, Keybank, and Margaret Dalton fail to
state a claim upon which relief can be granted.  I discuss the

issues in turn.

**A.    <u>Res Judicata</u>**

     **1.    <u>Applicable Law</u>**

          Under the well-settled doctrine of <u>res judicata</u>, a subsequent action is barred where: (1) the prior action concluded with a final adjudication on the merits; (2) the prior claims and the current claims involve the same parties or those in privity with them; and (3) the claims asserted in the present action were, or could have been, asserted in the prior action because they arise from a common nucleus of operative fact.  <u>See</u> <u>Monahan v. New York City Dep't of Corr.</u>, 214 F.3d 275, 285 (2d Cir. 2000).

          Generally, "a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." <u>United States Postal Serv. v. Gregory</u>, 534 U.S. 1, 16 (2001) (Ginsburg, J., concurring) (quoting Restatement (Second) of Judgments § 84 (1982)); <u>see also</u> <u>City of Gainesville v. Island Creek Coal Sales, Co.</u>, 618 F. Supp. 513, 517 (N.D. Fla. 1984) ("Valid arbitration decisions are accorded <u>res judicata</u> and collateral estoppel effect.") (citations omitted).

          The Supreme Court, however, has refused to give preclusive effect to arbitration proceedings in certain circumstances, such as when they would foreclose a subsequent § 1983 action.  <u>See</u> <u>McDonald v. City of West Branch</u>, 466 U.S. 284 (1984); <u>see also</u> <u>Chicago Teachers Union, Local No. 1 v. Hudson</u>,

475 U.S. 292, 308 n.21 (1986) (citing <u>McDonald</u> for the
proposition that the "arbitrator's decision would not receive
preclusive effect in any subsequent § 1983 action"); <u>Dean Witter
Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 222 (1985) (holding that
<u>McDonald</u> held that no "judicially fashioned rule of preclusion
. . . permits a federal court to accord res judicata or
collateral estoppel effect to an unappealed arbitration award in
a case brought under 42 U.S.C. § 1983").

        To the contrary, courts have consistently given
preclusive effect to an arbitration award against subsequent RICO
claims -- even if the arbitration was not framed as a RICO action
-- so long as the arbitration addressed issues or predicate acts
underlying the subsequent RICO claims.  <u>See</u> <u>Cullen v. Paine
Webber Group, Inc.</u>, 689 F. Supp. 269, 277 (S.D.N.Y. 1988); <u>see
also</u> <u>City of Gainesville v. Island Creek Coal Sales, Co.</u>, 618 F.
Supp. 513, 518 (N.D. Fla. 1984) (arbitration of factual matters
underlying RICO claims precludes later litigation), <u>aff'd</u>, 771
F.2d 1495 (11th Cir. 1985); <u>Sports Factory, Inc. v. Chanoff</u>, 586
F. Supp. 342, 347-48 (E.D. Pa. 1984) (giving arbitration <u>res
judicata</u> effect in subsequent RICO lawsuit because both actions
involved same core facts).  I now apply these principles to
plaintiff's claims.

    2.   **AWM, Dr. Brown, and Dr. Waldman**

        Plaintiff's RICO claims are barred by the doctrine of
<u>res judicata</u>, to the extent the claims are asserted against AWM
and those in privity with AWM.

                        - 8 -

First, the second arbitration award between AWM and plaintiff was a final determination on the merits with <u>res judicata</u> effect.  <u>See, e.g.</u>, <u>Gregory</u>, 534 U.S. at 16.  An arbitrator adjudicated the dispute between the two parties, and a New York state court confirmed the award.[3]  Because the arbitration is not being applied against a subsequent § 1983 suit, the general rule that an arbitration award has <u>res judicata</u> effect applies.  <u>See</u> <u>Cullen</u>, 689 F. Supp. at 277 (construing <u>McDonald</u> as limiting the preclusive effect of arbitrations only in the § 1983 context).

Second, Dr. Battle and AWM were and are involved in both proceedings, so identity of parties exists.  In addition, Dr. Brown and Dr. Waldman are officers of AWM, and hence, are in privity with AWM for <u>res judicata</u> purposes.  <u>See</u> <u>id.</u> at 278 (finding officers of a corporation to be in privity with the corporation for <u>res judicata</u> purposes).

Third, the claims in the current action arise from the same transactional nucleus of operative facts that formed the basis for the arbitration proceeding.  Although couched under the guise of RICO and fraud allegations, plaintiff's claims in this complaint are nearly indistinguishable from the claims he asserted in the arbitration proceeding.  For example, in the

---

[3]      Even if the award were not confirmed, however, it would still have preclusive effect.  <u>See</u> <u>Jacobson v. Fireman's Fund Ins. Co.</u>, 111 F.3d 261, 267-68 (2d Cir. 1997) (holding that "res judicata and collateral estoppel apply to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award") (internal quotations and citation omitted).

arbitration, plaintiff claimed that "AWM breached the MOU by not providing him with certain records, that AWM unlawfully kept property belonging to him including but not limited to medical charts, that he was a member of AWM, that AWM used the Key Bank loan proceeds . . . ."  (Hyland Decl. Ex. B at 3).  He also argued to the arbitrator that the MOU was fraudulent.  (Compl. ¶ 41) ("arbitrator refuse[d] to consider the MOU fraudulent, even in the face of letter produced by AWM that supports my claim").

Here, plaintiff's complaint does nothing more than assert the same exact claims within the context of boilerplate RICO and fraud language.  Specifically, plaintiff states that AWM deprived him of honest services when AWM "refused, in [sic] multiple occasions, to produce the documents requested" by plaintiff (Compl. ¶ 51); AWM and the other defendants "conspired and engaged in a scheme to defraud [plaintiff] of the benefits from his membership with AWM" (id. ¶ 43); Keybank and AWM made fraudulent representations to plaintiff in an "effort to fraudulently extort payment of AWM's line of credit" from plaintiff (id. ¶ 46); and the MOU was fraudulent (id. ¶ 31).

Thus, a comparison of the claims asserted in the complaint here with the claims made in the arbitration shows that this RICO action is merely an attempt to relitigate claims that were already decided in the arbitration.  The fact that the current action is camouflaged under RICO and fraud allegations does not conceal its true nature.  See Cullen, 689 F. Supp. at 279 ("Although the defenses and counterclaims of [certain

- 10 -

plaintiffs] in the arbitration proceedings were not framed as a
RICO action, nor were the allegations characterized as acts of
mail, wire and securities fraud as is true in this complaint, it
is fair to conclude that there was, nevertheless, an identity of
issues as that phrase is used in res judicata decisions.").

Accordingly, the RICO claims against AWM, Dr. Brown,
and Dr. Waldman -- including the underlying allegations of fraud
and extortion -- are all foreclosed under res judicata.  The
claims against the other defendants -- the Scolaro Law Firm,
Marco Compagni, Keybank, and Margaret Dalton -- are not barred by
res judicata because the other defendants were not parties to the
arbitration and were not in privity with those who were.

**B.   RICO -- As to Remaining Defendants the Scolaro Law Firm,
Marco Compagni, Keybank, and Margaret Dalton**

**1.   Applicable Law**

To plead a RICO claim under 18 U.S.C. § 1962(c), a
plaintiff must allege "(1) conduct (2) of an enterprise (3)
through a pattern (4) of racketeering activity."  DeFalco v.
Bernas, 244 F.3d 286, 306 (2d Cir. 2001).  The requirements must
be met as to each defendant.  Id.

A "pattern of racketeering activity" requires at least
two acts of racketeering activity within a span of ten years.
Id.  "Racketeering activity" is defined broadly by the statute,
and encompasses various state and federal offenses including,
among other things, fraud and extortion.  See 18 U.S.C. §
1961(1).

- 11 -

### a.  **Fraud**

When alleging fraud, however, plaintiff is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  This requires the plaintiff to (1) detail the statements or omissions that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.  See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 187 (2d Cir. 2004) (citation omitted).  In short, a plaintiff must "set forth the who, what, when, where and how of the alleged fraud." United States ex rel. Woods v. Empire Blue Cross and Blue Shield, No. 99 Civ. 4968 (DC), 2002 WL 1905899, at *4 (S.D.N.Y. Aug. 19, 2002).  While malice or intent may be averred generally, this does not give plaintiff "license to base claims of fraud on speculation and conclusory allegations."  Eternity Global, 375 F.3d at 187 (citations omitted).  Rather, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent. Id.

### b.  **Extortion**

On the other hand, to state a claim of extortion under the Hobbs Act, 18 U.S.C. § 1951, plaintiff must show that defendants (1) induced plaintiff, with plaintiff's consent, to part with property, (2) through the wrongful use of actual or threatened force, violence or fear (including fear of economic loss), (3) in such a way as to adversely affect interstate

commerce.  See McLaughlin v. Anderson, 962 F.2d 187, 194 (2d Cir. 1992).

    **2.   Application**

        Thus, to determine whether plaintiff has adequately alleged a "pattern of racketeering activity," I must look at the predicate acts he alleges.

        **a.   Fraud**

        Plaintiff essentially alleges two predicate acts of racketeering activity based on fraud.  Plaintiff asserts that defendants: (1) fraudulently altered documents to advance their arbitration claim (Compl. ¶¶ 44, 48), and (2) made fraudulent representations to get plaintiff to pay for the loan from Keybank (id. ¶¶ 46-47).

        Here, plaintiff's allegations of fraud fall well short of the heightened pleading standard because he simply does not provide particulars.  The complaint offers only conclusory allegations that do not specify "who, what, when, where, and how."

        For instance, plaintiff asserts that AWM and the Scolaro Law Firm "engaged in fraudulent alteration of documents that were then fraudulently submitted to the New York State Court to further the fraudulent claim of arbitration."  (Compl. ¶ 44).  Throughout the entire complaint, however, the only example that plaintiff gives regarding fraudulent alteration of documents is that the MOU was re-dated.  (Id. ¶ 31).  Nevertheless, plaintiff does not explain how re-dating the MOU made it fraudulent nor

does he explain how the MOU was fraudulent.  Presumably, plaintiff believed that he was to receive a new MOU that reflected a change in the status of his relationship with AMW. (Id. ¶ 44).  If this is the case, then plaintiff's actual quarrel is with whether the MOU governed his relationship with AWM, and not whether the MOU itself was fraudulently altered.  Merely stating in a conclusory fashion that the MOU was fraudulent because it was re-dated, without explaining why it was fraudulent, is insufficient under Rule 9(b).[4]  See, e.g., Acito v. IMCERA Group, Inc., 47 F.3d 47, 53 (2d Cir. 1995) ("conclusory allegations of fraud do not satisfy the pleading requirements of Rule 9(b)").

        Notably, plaintiff's other allegations of fraud fare no better.  For example, he states that Keybank deprived him of honest services when it "made fraudulent representations by means of the United States Postal Service with the end of extorting money" from him.  (Compl. ¶ 47).  He further states that Keybank made "fraudulent claims that the Line of Credit was not renewed and not [sic] been paid."  (Id. ¶ 55).  Again, plaintiff fails to explain how or why these representations were fraudulent.  The

---

        [4]     Moreover, this is a challenge to the validity of a state court decision, and plaintiff should have appealed to the state court.  Under Rooker-Feldman, a federal district court is not the proper forum for such challenges.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (under Rooker-Feldman, district courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

fact that a representative from a bank stated that a certain line of credit was not renewed and had not been paid off does not give rise to any inference of fraudulent intent -- much less a strong inference.  See Eternity Global, 375 F.3d at 187.

The lack of particularity also holds true with respect to plaintiff's fraud allegations against Margaret Dalton and Marco Compagni.  For example, plaintiff asserts that Margaret Dalton was involved in a scheme to make fraudulent claims to the New York state court that plaintiff "was not a member of AWM when the Keybank documentation prove[d] the contrary."  (Compl. ¶ 43).  Plaintiff does not, however, detail what these statements were, and how they were fraudulent as compared to the Keybank documentation.  The fact that Ms. Dalton stated that plaintiff was not a member of AWM also does not give rise to any inference of fraudulent intent.

With respect to Marco Compagni, he states that Mr. Compagni and the Scolaro Law Firm "engaged in fraudulent alteration of documents and creation of fraudulent claims with further use of the United States Postal Service to advance their fraudulent activity."  (Id. ¶ 48).  Again, plaintiff fails to explain what documents were altered, how they were altered, and what was fraudulent about these documents.

Accordingly, none of plaintiff's allegations of fraud, as predicate acts to his RICO suit, are sufficient under Rule 9(b).

b.   **Extortion**

Plaintiff's remaining predicate acts are his allegations of extortion under the Hobbs Act.  Although stated in various ways, plaintiff essentially makes two claims of extortion under the Hobbs Act.  First, plaintiff asserts that defendants intentionally misrepresented the Keybank loan with the intent to obtain property from plaintiff by causing him economic fear. (Plaintiff's Opposition to Motion to Dismiss ("Pl. Opp.") at 7). Second, plaintiff asserts that defendants withheld materials, office supplies, and other products from plaintiff, which induced economic fear in plaintiff and prevented him from practicing medicine.  (Id.).  The first Hobbs claim is easily dismissed as plaintiff alleges misrepresentation, which falls under the rubric of fraud -- not extortion.

Moreover, plaintiff's second Hobbs claim fares no better.  Here, plaintiff alleges that Marco Compagni sent a letter to him stating that he was in possession of some of plaintiff's charts, office equipment, and supplies, and that "none of these items would be returned unless I [plaintiff] do whatever AWM wants."  (Compl. ¶ 30).  Plaintiff asserts that defendants "were well aware that doing so would effectively destroy [plaintiff's] medical practice."  (Pl. Opp. at 7).  Even under Rule 8(a)'s more lenient pleading standard, however, plaintiff's extortion allegation is insufficient because it does not allege any "wrongful use of actual or threatened force, violence, or fear."  See McLaughlin, 962 F.2d at 194; Park South

Associates v. Fischbein, 626 F. Supp. 1108, 1114 (S.D.N.Y. 1986),
aff'd, 800 F.2d 1128 (2d Cir. 1986).  Plaintiff argues that Mr.
Compagni's letter amounted to the use of economic fear (Pl. Opp.
at 7), which the Second Circuit has accepted as sufficient to
support an extortion allegation under the Hobbs Act, see DeFalco,
244 F.3d at 313.  Nonetheless, the letter by Mr. Compagni, which
is incorporated within the complaint, shows the contrary.
(Compl. Ex. E).  In the letter, Mr. Compagni writes:  "We would
be happy to make arrangements to forward the items listed . . .
above. . . .  However, we must first resolve the outstanding
issues pertaining to [plaintiff's] obligations to complete
patient records as referenced above and we need to obtain
acknowledgments of [plaintiff's] obligation to assume his
Division Debt as provided for in his original Memorandum of
Understanding."  (Id.).  It is apparent from the letter that
there was no use of economic fear, and that plaintiff's
conclusory allegations find no support in his own exhibit.  I
conclude, then, that plaintiff has not adequately pled any
predicate acts for purposes of this RICO action.

        Moreover, plaintiff has not pled a "pattern of
racketeering activity."  See DeFalco, 244 F.3d at 306 (stating
that "at least two predicate acts must be present to constitute a
pattern" and that sometimes, even two acts is not sufficient)
(citation omitted).  Where, as here, plaintiff has not
successfully pled any predicate acts -- much less a pattern --
his RICO action cannot withstand dismissal.  See McLaughlin, 962

- 17 -

F.2d at 195 (dismissing RICO complaint because plaintiff only adequately alleged a single predicate act of extortion). Consequently, plaintiff's RICO claim under § 1962(c) does not state a claim upon which relief can be granted. Plaintiff's RICO conspiracy claim under § 1962(d) is also dismissed because the RICO conspiracy claim is entirely dependent on plaintiff's substantive RICO claims. See First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 164 (2d Cir. 2004) ("And because Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the District Court's dismissal of the RICO conspiracy claims.").

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted and plaintiff's complaint is dismissed, with prejudice.

SO ORDERED.

Dated:     New York, New York
           September 15, 2006

                                    DENNY CHIN
                                    United States District Judge

- 18 -